UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Miranda T.,[1]

        Plaintiff,

v.

Kilolo Kijakazi,
Acting Commissioner of Social Security,

        Defendant.

Court File No. 22-cv-708 (JRT) (LIB)

**REPORT & RECOMMENDATION**

      Plaintiff, Miranda T. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Acting Commissioner of Social Security ("Defendant") denying her application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g).

      Both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the parties' written submissions. [Docket Nos. 11, 14]. For the reasons discussed herein, the undersigned recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 11], be **GRANTED**, and that Defendant's Motion for Summary Judgment, [Docket No. 14], be **DENIED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Report and Recommendation. Accordingly, where the Court refers to Plaintiff by her name, only her first name and last initial are provided.

## I. Procedural History

On June 12, 2020, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. (Tr. 13, 163-169).[2] Plaintiff alleged that her disability began on August 25, 2019, and that her disability was caused by impairments of "brain trauma -- accident," "blurred vision," "dizzy," and "blood pressure." (Tr. 13, 61). The Commissioner initially denied Plaintiff's present claims on October 6, 2020, and again, upon reconsideration, on December 11, 2020. (Tr. 13, 90-94, 102-105). On December 14, 2020, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 13, 106-107).

Administrative Law Judge Virginia Kuhn (hereinafter "ALJ") conducted a hearing on May 19, 2021. (Tr. 13). Plaintiff testified at the hearing, along with an independent vocational expert, Mary Harris. (Tr. 13). On July 28, 2021, the ALJ issued a decision denying Plaintiff's request for a period of disability and disability insurance benefits. (Tr. 13-27). The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 27).

Thereafter, on August 18, 2021, Plaintiff sought review of the decision by the Appeals Council. (Tr. 1-6). Subsequently, on January 20, 2022, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Accordingly, the ALJ's decision became the final decision of the Acting Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

On March 18, 2022, Plaintiff filed the present action. (Compl., [Docket No. 1]). Thereafter, both parties submitted cross-motions for summary judgment, and the Court took the matter under advisement on the written submissions. [Docket Nos. 11, 14].

---

[2] Throughout this Report and Recommendation, the Court refers to the Administrative Record, [Docket No. 9], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 55 exhibits. (See Administrative Record, [Docket No. 9]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

## II. Standards of Review

### A. Administrative Law Judge's Five-Step Analysis

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge ("ALJ"). 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

### B. Appeals Council Review

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council; however, the Appeals Council need not grant that request for review. See 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal court within sixty days after notice of the Appeals

Council's action.  See 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.  In this case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled.  (Tr. 1-6).

**C. Judicial Review**

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps.  However, judicial review of the Commissioner's decision to deny disability benefits is constrained to a determination of whether the decision is supported by substantial evidence in the record, as a whole.  42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner only when such findings are not supported by substantial evidence on the record as a whole.").  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007); Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ.  Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004).  The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence.  Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion.  Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm

the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley, 528 F.3d at 1115. The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that he is disabled. See 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated he cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

**III. Decision Under Review**

Before beginning the five-step disability evaluation process, the ALJ first determined that Plaintiff met the insured status requirement of Social Security Act through December 31, 2024. (Tr. 15). This finding is not in dispute.

Thereafter, the ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since August 25, 2019. (Tr. 15). This finding is not in dispute. The Court will refer to the period of time between the date Plaintiff last engaged in substantial gainful activity and the date through

5

which Plaintiff meets the insured status requirement of the Social Security Act as "the adjudicated period."

At step two, the ALJ concluded that Plaintiff had the following severe impairment: traumatic brain injury. (Tr. 15). This finding is not in dispute.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listing 11.18. (Tr. 18-19). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs; occasional stopping, kneeling, crouching and crawling; no balancing in the context of being at heights and along with that, no work at unprotected heights or with dangerous moving machinery, and no work on a wet or slippery surface; and no tasks that would cause vibrations to the body.

(Tr. 19). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record, as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to produce some of the alleged symptoms." (Tr. 20). However, the ALJ also found that

> [Plaintiff's] statements and the third-party statements concerning the intensity, persistence and limiting effects of these symptoms [were] determined to diminish the capacity of basic work activities only to the extent to which they can reasonably be accepted as consistent with the objective medical and other evidence of record and the above residual functional capacity. Her allegations concerning the impairments and the impact on her ability to work are not sufficiently supported by the record as a whole in light of the objective medical findings, the medical history and degree if medical treatment required, and the [Plaintiff's] description of her activities of daily living for the reasons explained in [the ALJ's] decision.

(Tr. 20). Plaintiff challenges this credibility finding by the ALJ.

6

Based on that RFC determination, the ALJ found that Plaintiff was able to perform past relevant work as a manager. (Tr. 25). Plaintiff challenges this finding.

Finally, at step five, the ALJ concluded that "[i]n addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform, considering the [Plaintiff's] age, education, work experience, and residual functional capacity." (Tr. 26). Relying upon testimony from independent vocational expert, Mary Harris ("IVE Harris"), the ALJ specifically found that, among the representative occupations, Plaintiff would be able to perform the requirements of short order cook (Dictionary of Occupational Titles No. 313.374-014), due to her transferrable cooking skills, of which there are 140,000 positions in the national economy; and bartender (Dictionary of Occupational Titles No. 312.474-010), due to her bartending skills and past duties, of which there are 350,000 positions in the national economy. (Tr. 27). Plaintiff challenges the ALJ's findings at step five.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 27).

## IV. Analysis

Plaintiff challenges the ALJ's decision on several grounds. This Court finds one of these arguments are sufficiently convincing to warrant remand: the ALJ erred in finding that Plaintiff could perform her past relevant occupation as generally performed.

"Past relevant work is work that [a claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). Generally, a claimant will be found not disabled at Step Four of the five-step disability determination if she maintains the RFC to perform her past relevant work, either as she actually performed it or as it is generally performed in the national economy. Social Security

7

Ruling (SSR) 82–61, 1982 WL 31387, at *2; see also 20 C.F.R. §§ 404.1560(b), 416.960(b); Blackwell v. Colvin, No. 14-cv-252 (JMB), 2015 WL 4132000, at *17 (E.D. Mo. July 8, 2015) (citing Arriaga v. Astrue, No. 11-CV-261, 2012 WL 4105091, at *17 (D. Neb. Sept. 18, 2012)). An ALJ will then classify a job based on occupational descriptions given in the DOT. Id.; Titles II & XVI: Past Relevant Work-the Particular Job or the Occupation As Generally Performed, SSR 82-61, 1982 WL 31387 at *1-2 (S.S.A. 1982).

But "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." SSR 82-61, 1982 WL 31387 at *2 (S.S.A. 1982); Sloan v. Saul, 933 F.3d 946, 950 (8th Cir. 2019) ("A composite job involves 'significant elements of two or more occupations . . . '"); Past Relevant Work (PRW) as the Claimant Performed It, SSA Program Operations Manual (POMS) DI 25005.020 ("A composite job does not have a DOT counterpart, so [an ALJ shall] not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'").

If past relevant work was a composite job, the ALJ should instead "find the claimant capable of performing the composite job only if he or she can perform all parts of the job." POMS DI 25005.20. Failure to do so "constitutes an error of law and grounds for remand." Blackwell v. Colvin, No. 4:14 CV 252 JMB, 2015 WL 4132000, at *17 (E.D. Mo. July 8, 2015) (reversible error when an ALJ failed to recognize that past relevant work was composite and made up of jobs at two different exertional levels); McAbee v. Colvin, No. 15-5097, 2016 WL 3983734, at *2-3 (W.D. Ark. July 26, 2016) (ALJ did not even mention the work "composite" in his past relevant work discussion).

8

In other words, where a plaintiff's past relevant work involves a composite job, the ALJ must evaluate the plaintiff's ability to perform the past relevant work by analyzing the specific facts of the case, rather than by relying on general job descriptions:

> To determine how a job is usually performed in the national economy, the Commissioner may rely on job descriptions appearing in the Dictionary of Occupational Titles. [SSR 82–61, 1982 13187, at *1–*2 (1982)]. However, composite jobs "have significant elements of two or more occupations and, as such, have no counterpart in the DOT." Id. Therefore, when a claimant's past relevant work is considered to be a composite job, the claimant's ability to perform [her] past job must be "evaluated according to the particular facts of each individual case." Id.

2012 WL 4105091, at *17.

The Court agrees with Plaintiff that the present record shows that her past relevant work for the Department of Veterans of Foreign Wars ("VFW") was a composite job. A composite job is "work that has a blend of tasks from several different occupations." Blackwell, 2015 WL 4132000, at *17 (quoting Program Operations Manual System ("POMS") DI 25001.001(11)). "The main duties of a composite job will 'only be adequately described by multiple DOT occupations.'" Id.

In her work history report, Plaintiff provided that her job title at VFW was that of a manager, and described her work duties as involving "get[ting] registers ready – settlements from [the] day before, plac[ing] orders, receiv[ing[ orders, fill[ing] machines and shelves, banking, payroll, training, supervising, [and] fixing." (Tr. 190-191). At the May 19, 2021, administrative hearing, Plaintiff testified that she worked as a bar manager at the VFW, planning and booking events, bartending, training employees, managing the cash register, bookkeeping, and stocking inventory. (Tr. 39-41). Additionally, when IVE Harris was asked about Plaintiff's past relevant work and whether Plaintiff had any readily transferrable skills to any other occupations, she referred to Plaintiff's past work experience as a manager, and as having done cooking, bartending,

9

and "a lot of clerical administrative skills." (Tr. 54-55). The ALJ then acknowledged Plaintiff and IVE Harris' testimonies in her decision. (See Tr. 25, 26) (providing that Plaintiff "managed a club/bar and planned and booked events. . . bartended and did bookkeeping," as well as, "supervising, . . . training, ordering, record keeping, cooking, bartending, and customer service."). (Tr. 25, 26).

Furthermore, upon an examination of the relevant DOT job descriptions, Plaintiff and IVE Harris' description of Plaintiff's own duties shows that her past occupation as manager included duties from two DOT occupations. Specifically, Plaintiff testified that she bartended. However, this is not described in the DOT's description of a manager for a liquor store establishment but is instead consistent with DOT's definition of a bartender. See DOT No. 312.474-010.[3] The same can be said for IVE Harris' report that Plaintiff's duties as a manager involved cooking—this is also not included in DOT § 187.167-126 but is instead consistent with the DOT's definition of a short order cook. See DOT § 313.374-014.

Therefore, based on the ALJ's decision, Plaintiff and IVE Harris' respective statements at the hearing and various reports, and pertinent DOT job descriptions, the ALJ, IVE Harris, and Plaintiff all seemed to concur that Plaintiff's prior job as a manager involved various duties, including duties from two other DOT occupations—short order cook and a bartender. See DOT

---

[3] Specifically, IVE Harris' report identified Plaintiff's past occupation as a manager for a liquor establishment or club (DOT § 187.167-126). (Tr. 258). DOT § 187.167-126 describes the duties of a manager for a liquor establishment as follows:

> Coordinates activities of workers engaged in selling alcoholic beverages for consumption on premises: Estimates and orders foodstuffs, liquors, wines, or other beverages, and supplies. Interviews, hires, trains, and discharges workers. Adjusts customer's complaints concerning service, food, and beverages. Inspects establishment and observes workers and patrons to ensure compliance with occupational, health, and safety standards and local liquor regulations. May plan and arrange promotional programs and advertisement. May hire entertainers.

DOT § 187.167-126.

10

313.374-041; 312.474-010. This supports the conclusion that Plaintiff's past relevant work involved a blend of occupations described by multiple DOT job descriptions. Thus, her past relevant work was a composite job.

Accordingly, the Court finds that, based on the record presently before the Court, there is sufficient evidence to show that Plaintiff worked in a composite job.

However, while the record evidence shows that Plaintiff's past relevant work was a composite job involving both cooking and bartending, the ALJ did not analyze both components of Plaintiff's past relevant work in her Step Four analysis, nor did she engage in a fact-specific evaluation of Plaintiff's ability to perform her past relevant work as it actually existed. Rather, the ALJ found that Plaintiff was capable of performing her past relevant work of manager as generally performed in the national economy. The ALJ did not analyze Plaintiff's past work as a composite job.

Thus, the Court will recommend remand of this case for the ALJ to assess Plaintiff's past relevant work under the rules applicable to composite jobs. See Betty H. v. Berryhill, No. 18-CV-1105 (LIB), 2019 WL 4898465, at *4 (D. Minn. Aug. 7, 2019).

Because the Court will recommend remanding the matter back to the ALJ to reevaluate her Step Four analysis with respect to Plaintiff's past relevant composite work, the Court need not address at this time Plaintiff's argument regarding the standard applied for evaluating her transferrable skills, the ALJ's weighing of the medical opinion evidence in the record, or whether Plaintiff's mild mental limitations were included in the RFC.[4] However, a review of her

---

[4] Plaintiff alternatively argues that the ALJ and the Appeals Council judges had no legal authority to adjudicate this case because they were not properly appointed by former Acting Commissioner Nancy Berryhill nor by any subsequent Commissioner or Acting Commissioner. (Plf.'s Mem., [Docket No. 12], at pp. 14-15). However, because the Court recommends remand on other substantive grounds, the Court does not reach these constitutional arguments raised by Plaintiff. See Beeson v. Hudson, 630 F.2d 622, 627 (8th Cir. 1980) (collecting cases) ("It is the established practice of the federal courts to avoid the decision of delicate constitutional questions if the case presenting them may be disposed of on alternative grounds."); Ernestine L. v. Kijakazi, No. 1:21CV139, 2022 WL 110240, at *5 (N.D. Ind.

transferrable skills, the weight to be given to a treating physician, and a review of her mental limitations would necessarily be encompassed in the ALJ's Step Four reevaluation of her RFC determination as applied to the duties of a composite job.

## V. Conclusion

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment, [Docket No. 11], be **GRANTED**;

2. Defendant's Motion for Summary Judgment, [Docket No. 14], be **DENIED**; and

3. The above matter be **REMANDED** to the Social Security Administration pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with the opinion above.

Dated:  October 26, 2022

s/Leo I. Brisbois<br>
Hon. Leo I. Brisbois<br>
United States Magistrate Judge

---

Jan. 12, 2022) (citing Ashwander, 297 U.S. at 347) ("As this Court has determined that remand is required on the above substantive issues, the Court will invoke the doctrine of constitutional avoidance and not reach the constitutional issue."); Cochenour v. Cochenour, 888 F.2d 1244, 1245-46 (8th Cir. 1989) (finding that "[w]e need not reach constitutional issues unless required to do so to decide the case.") (citations omitted).

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).